Leonard T. LUCAS, Petitioner,

v.

HARTFORD ACCIDENT AND INDEMNI-
TY COMPANY and/or New York Un-
derwriters Insurance Company, Respon-
dents.

No. B–6635.

Supreme Court of Texas.

June 8, 1977.

Rehearing Denied July 6, 1977.

Granberry & Hines, F. P. Granberry,
Crockett, for petitioner.

William Drew Perkins, Lufkin, for re-
spondents.

POPE, Justice.

The sole question presented in this work-
er's compensation case is whether the court
of civil appeals erred in its holding that
there was no evidence of a causal connec-
tion between the injury that Leonard T.
Lucas received in the course of his employ-
ment and the disability. Upon the basis of
a favorable jury verdict, Lucas obtained a
judgment for total and permanent incapaci-
ty, but the court of civil appeals reversed
the judgment and rendered judgment that
he take nothing. 547 S.W.2d 386. We re-
verse the judgment of the court of civil
appeals and remand the cause to that court.

On August 24, 1974, Lucas, while search-
ing for some items which his employer
needed, caught the toe of his shoe under an
angle iron, lost his balance and cut his left
ankle. Five days later, Dr. Nathan Cald-
well examined the ankle and found it in-
fected, with red swollen areas around the
lower left leg. About two weeks later Lu-
cas developed thrombophlebitis in both legs.
He had not previously suffered from phlebi-
tis, but he had other ailments. He was
diabetic, had a chronic ulcer on his toe, and
varicose veins. He had also been recently
treated for an inflammation of the intes-
tines and was doing light work on advice of
his doctor.

The defendant, insurer, argues that there is no evidence that in reasonable medical probability the cut was the producing cause of the incapacity. *Lenger v. Physician's General Hospital, Inc.,* 455 S.W.2d 703 (Tex. 1970); *Insurance Co. of North America v. Myers,* 411 S.W.2d 710 (Tex.1966).

■ There is direct evidence of the vital fact in the record before us, and for that reason we need not concern ourselves with the scintilla rule nor with inferences. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898); Calvert, *No Evidence and Insufficient Evidence,* 38 Tex.L.Rev. 361, 362–365 (1960). Dr. Caldwell testified with respect to the incapacity:

Q What, in your opinion, caused that situation to occur?

A I think that the thrombophlebitis was the cause of the pain in his legs. I think the thrombophlebitis was probably at least started at that time by the superficial injury that he received which became infected which is not an uncommon problem in diabetics.

\* \* \* \* \* \*

Q But for the cut that he had received back in August of '75, would he have developed this severe thrombophlebitis?

A In all likelihood he would not have. It's possible, who knows?

\* \* \* \* \* \*

Q Now, and you said you cannot tell whether he would or would not have had the thrombophlebitis with or without this superficial injury to his ankle.

A No, sir, I can't really say that he would or wouldn't have. I think that that injury did predispose to this episode.

\* \* \* \* \* \*

A All I could tell, there was an ankle that had been scratched and was infected which was immediately adjacent to the veins that became involved. That's the reason I thought there was a relationship.

Q There does not necessarily have to be a relationship, does there?

A Not necessarily but probably.

Dr. Caldwell concluded his direct examination by stating that his records reflect that on August 29, 1974, he told Mr. Lucas not to go back to work. He testified that standing or walking on legs diseased by thrombophlebitis "could theoretically be the factor that kicked a blood clot loose and let it go its devastating route." Dr. Caldwell also stated that "in all reasonable medical probability Lucas' condition is going to exist in its present state or worse for the balance of his life."

■ In deciding a "no evidence" point we must view the evidence in its most favorable light in support of the finding, and we must consider only the evidence and inferences which support the finding. *Fisher Construction Company v. Riggs,* 160 Tex. 23, 325 S.W.2d 126 (1959); *Harrison v. Chesshir,* 159 Tex. 359, 320 S.W.2d 814 (1959); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696 (1914).

■ The insurer argues and the court of civil appeals held that Dr. Caldwell's use of qualifying phrases reduced his testimony to no evidence at all. "I think," "in all likelihood," "It's possible," are phrases found in the quoted testimony. But, the substance of the medical testimony, taken in context, satisfies the law's demand for reasonable medical probability. *See* 1 McCormick & Ray, Texas Law of Evidence § 531 (2d ed. 1956).

We must reverse the judgment of the court of civil appeals. The defendant insurer did have points before that court attacking the sufficiency of the evidence to support the verdict as well as points that the findings were against the great weight and preponderance of the evidence. We accordingly remand the cause to that court to pass upon those matters over which this court has no jurisdiction. *Hubacek v. Ennis State Bank,* 159 Tex. 576, 325 S.W.2d 124 (1959).

The judgment of the court of civil appeals is reversed and the cause is remanded to that court.