INTERNATIONAL INSURANCE COMPANY, Appellant,

v.

Valentina A. TORRES, Appellee.

No. 8932.

Court of Civil Appeals of Texas, Amarillo.

Dec. 18, 1978.

Rehearing Denied Jan. 22, 1979.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellant.

Maner, Nelson, Jones & Reaud, Inc., John H. Richards, Lubbock, for appellee.

DODSON, Justice.

International Insurance Company appeals from a judgment based upon a jury verdict awarding Valentina Torres damages for total and permanent incapacity resulting from injuries sustained during the course and scope of her employment. The insurance company attacks the jury findings and judgment with legal and factual sufficiency points of error. We determine that the evidence supports the jury findings and that such findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust. Affirmed.

Mrs. Torres is a 41 year old divorced parent with a sixth grade education and five children, age 13 to 21 still at home. In 1971 or 1972, after having previously performed manual labor on various jobs without suffering injury, Mrs. Torres began work as a maid at St. Mary's of the Plains Hospital in Lubbock. Her job duties included mopping, sweeping, changing linens, moving and cleaning mattresses, and occasionally moving patients from one room to another. On June 14, 1974, Mrs. Torres was injured when she slipped and fell on a wet floor in the emergency room of St. Mary's Hospital. The testimony indicated that Mrs. Torres' legs went out from under her, causing her to injure her back and arm as well as her bottom.

Mrs. Torres was examined by one of the emergency room physicians, who prescribed pain pills and told her to come back in two weeks if the pain continued. She did not work any more that afternoon, but she resumed work the following day. Mr. Claude Bennett, Mrs. Torres' supervisor, testified that following the accident Mrs. Torres "wasn't able to do her work as well as she had before." He elaborated by stating that it took her longer to do the same work she had done before and that there was an outward evidence of physical pain on occasion, but that she was not a complainer. Mr. Bennett further testified that when it became obvious that she couldn't handle the patient ward, he assigned Mrs. Torres to the mental health ward of the hospital, which was the lightest work load area in the hospital.

Complaining of pain, Mrs. Torres returned to the emergency room on three occasions. Each time she was examined by a different doctor who recommended that she continue the medication provided by the first doctor and told her that the pain she was experiencing would eventually go away.

Mrs. Torres continued working in the lighter duty mental health ward of the hospital until February 5, 1975. At that time she voluntarily terminated her employment. On direct examination, Mrs. Torres stated that the reason for quitting was a change in supervisors and the new supervisor wanted the employees to double their work. She further stated that she was still hurting from her injury. On cross examination, Mrs. Torres testified that she did not tell Mrs. Cox, the new supervisor, about her back hurting when she quit.

Mrs. Torres testified that her condition continued to deteriorate following her termination of employment at the hospital. She related that she slept with a heating pad, took hot baths and participated in supervised exercises to help her back. She further testified that there had been no significant period of time between the accident on June 14, 1974, and the trial on September 21, 1978, when she had been free of her back problems. Her right leg bothers her when she wants to do something, such as cleaning house. She is unable to do her housework and testified that she could hardly walk. She said she could not "go out and get a job and keep it doing manual labor."

Due to her continued pain, Mrs. Torres visited Dr. Robert Burns, a private physician who had treated her for an ulcer in 1972 or 1973. Dr. Burns examined Mrs. Torres twice and then made an appointment for her to visit Dr. Ted Sisco. Dr. Sisco also examined Mrs. Torres and referred her to Dr. Lloyd Garland, a neurosurgeon.

Dr. Garland testified that he first saw Mrs. Torres in his office on August 20, 1975.

He conducted X-rays, which he found to be within normal limits, and noticed a rather exaggerated limp when she walked. Mrs. Torres related to Dr. Garland that she was experiencing "continued discomfort around the right hip with extension of the pain into the right leg." Further, since she had stopped working she had "continued to have right leg pain with prickling sharp sensation into the right heel. She said she had difficulty walking because of the pain in her heel and would occasionally feel some diffuse numbness involving the entire right leg." On September 30, 1975, Mrs. Torres was admitted to Methodist Hospital, where she stayed until the 10th of October. During this hospital visit a lumbar myelogram was performed, the results of which showed no abnormalities.

Dr. Garland last saw Mrs. Torres on November 4, 1975. He testified concerning his patient's injuries that:

> [I]t is my opinion that Mrs. Torres was temporarily disabled up through the 4th of November which was the last time I saw her. I further projected that Mrs. Torres' disability would continue for a period of approximately six weeks at which time she could return to work. *I felt that a total disability would result from the injury in the range of approximately three to five percent to the body as a whole, primarily based on the fact that she had a significant muscular strain to her back which had weakened the ligamentous muscular structures and would predispose her to subsequent back injuries and would also tend to leave her with intermittent flareups of muscle soreness in her back which may or may not prevent her from working from a day or so over the next several years* (emphasis added).

After being unemployed for 14 months, Mrs. Torres began working at Feather Fabrics in May of 1976. Her job consisted of putting thread into a machine than ran yarn. She characterized the work as easy because she was not standing up. She testified that she had some back pain but she didn't complain because she needed the work to support her kids. Mrs. Torres worked only five months at Feather Fabrics at which time the company went out of business.

Mrs. Torres was next employed at Texas Instruments in a temporary job placing labels on calculators. Mrs. Torres testified that the work was easier than her work at St. Mary's because she sat all day and did not move anything heavy. The rate of pay Mrs. Torres received at Feather Fabrics and at Texas Instruments was slightly greater than that which she received at St. Mary's.

The jury found Mrs. Torres to be totally and permanently incapacitated beginning in February 1975. The insurance company attacks the findings and the resulting judgment rendered thereon with factual and legal sufficiency points.

In *Texas Employers' Ins. Ass'n v. Mallard*, 143 Tex. 77, 79, 182 S.W.2d 1000, 1001 (1944), our Supreme Court determined that:

> The term 'total incapacity' (or total disability), . . . does not imply any absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman, in such a way as to enable him to procure and retain employment, is regarded as being totally incapacitated, or totally disabled.

In considering the insurance company's assertions that there is no evidence of probative force to support the jury finding of total incapacity under the *Mallard* standard, we must review the evidence in a light most favorable to the jury findings and disregard all contrary evidence. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Having done so, we find sufficient evidence of probative force to support the total incapacity determination and overrule the no evidence points.

The insurance company also maintains that the evidence is factually insufficient to support the jury finding of total incapacity because the undisputed evidence shows that following her injury Mrs. Torres was able to procure and retain employment at Feather Fabrics for a period of five

months and at Texas Instruments for three weeks prior to, and continuing at, the time of trial.

Mrs. Torres terminated her employment at St. Mary's Hospital on February 5, 1975. She began the Feather Fabrics employment 14 months later. During this 14 month period she did not work and she testified that her condition got worse. She was treated by Doctors Burns, Sisco and Garland and spent ten days in the hospital. She also received physical therapy treatment during this period. Shortly after leaving St. Mary's she tried to obtain employment in Lubbock working as a maid, even though her condition was not improved, but was unable to do so. Mrs. Torres testified she took the job at Feather Fabrics because the work was easy, she could sit down and do the work rather than stand on her feet, and she needed "money to support her kids."

After the Feather Fabrics employment terminated in approximately October of 1976, Mrs. Torres did not obtain and retain employment until approximately three weeks before the trial. The trial began on September 21, 1977. Thus, she was unemployed approximately 11 months between the Feather Fabrics employment and Texas Instruments employment. The Texas Instruments job was temporary employment. At this job, Mrs. Torres placed labels on calculators passing on an assembly line. Again, she sat down to do the work rather than stand on her feet.

Mrs. Torres had five children living at home and four attended school. The insurance company stipulated to hardship. From February 5, 1975, to September 21, 1977, she worked approximately five months and three weeks at temporary employment. We are persuaded that the record bespeaks and supports the inference that Mrs. Torres worked out of hardship and economic necessity.

In the early case of *Davies v. Texas Employers' Ins. Ass'n,* 29 S.W.2d 987, 988 (Tex. Comm'n App.1930), the Commission of Appeals determined that the mere fact that a workman compensation claimant worked and earned money after injury does not conclusively preclude a jury finding of total and permanent disability. In *Traders & General Ins. Co. v. Heath,* 197 S.W.2d 130, 133 (Tex.Civ.App.—Galveston 1946, writ ref'd n. r. e.)' the court, in sustaining a total and permanent injury award by the jury, stated:

> [I]t is now well settled that the mere fact a workman worked and earned money after sustaining an injury is not conclusive on the issue of his capacity to work, but is evidentiary only, to be considered along with the other evidence. *Davies v. Texas Emp. Ins. Ass'n,* Tex.Com.App., 29 S.W.2d 987; *Traders & General Ins. Co. v. Collins,* Tex.Civ.App., 179 S.W.2d 525; *Lott v. American Surety Co.,* Tex.Civ. App., 140 S.W.2d 928; 45 Tex.Jur. 588, par. 161.

To the same effect is *Trinity Universal Insurance Company v. Scott,* 342 S.W.2d 348, 350–51 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n. r. e.), where Chief Justice Massey cites forty-one cases in support of this principle and concludes that the question is no longer open for a contrary consideration.[1]

In *Heath,* the court, in determining the factual sufficiency question, stated:

> The evidence here was certainly sufficient to have justified the jury in concluding that appellee was malingering. But under the cited holdings the findings of the jury on the issues in question cannot be set aside merely because of the evidence that appellee worked for nine months during the period between his injury and the trial.

197 S.W.2d at 133.

Nevertheless, the insurance company maintains that, under the facts of the case before us, we should disregard the *Heath* and *Scott* line of decisions and follow the cases represented by *Texas Employers' Insurance Association v. Hawkins,* 387 S.W.2d

---

1. *See also* 39A Texas Digest, *Workmen's Compensation* Key Numbers 840, 1636 for numerous cases to the same effect as *Davies, Heath* and *Scott.*

469 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.); *Commercial Insurance Company v. Kempe,* 440 S.W.2d 919 (Tex.Civ. App.—Dallas 1969, no writ); *Commercial Insurance Company v. Puente,* 535 S.W.2d 948 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.). In overturning a jury finding of total and permanent disability on insufficient evidence the *Puente* court said:

> [T]he overwhelming evidence from this record shows that appellee's condition does not and has not prevented him from obtaining and retaining permanent and lucrative employment calling for lighter duties which lighter duties he is able to perform full time.

535 S.W.2d at 953. In *Puente,* the claimant had returned to permanent employment with the same employer, at somewhat lighter duties and on a full time basis. At best, Mrs. Torres' employment after the injury was temporary.

Our review of *Hawkins* and *Puente* also reveals no evidence of hardship which compelled the claimant, in each instance, to work in spite of incapacity. In the case before us, the insurance company stipulates hardship and Mrs. Torres testifies that she worked to support her kids. These matters are not disputed in the record.

■ We conclude that many cases can be cited pro and con on the question of the sufficiency of the evidence to sustain a jury finding of total and permanent disability. We respectfully refrain from undertaking the impossible task of attempting to reconcile all of these cases. However, we are persuaded that the great weight of authorities support the prevailing view that the mere fact that a workman worked and earned money after sustaining an injury is not conclusive on the issue of capacity to work but is evidentiary only and is to be considered along with the other evidence in the case. *Davies v. Texas Employers' Ins. Ass'n, supra; Trinity Universal Ins. Co. v. Scott, supra; Traders & General Ins. Co. v. Heath, supra.* This principle is particularly applicable when, as here, the claimant continues to work and earn money after her injury out of hardship and economic neces-

sity. *Texas Employers' Ins. Ass'n v. Pillow,* 268 S.W.2d 716, 721 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.).

■ The courts of this state consistently hold that there is no precise formula by which incapacity may be measured. The duration and extent of disability received from an injury is at best an estimate which must be determined by a jury from all the pertinent facts before it. *Gulf Ins. Co. v. Hodges,* 513 S.W.2d 267, 272 (Tex.Civ.App. —Amarillo 1974, no writ); *Montoya v. American Employers' Ins. Co.,* 426 S.W.2d 661, 662–63 (Tex.Civ.App.—El Paso 1968, writ ref'd n. r. e.). Furthermore, the injured party's testimony, even though contradicted by medical witnesses, may establish the disability. *Texas Employers' Ins. Ass'n v. Nelson,* 534 S.W.2d 150, 152 (Tex. Civ.App.—Amarillo 1976, writ ref'd n. r. e.). Other cases further suggest that:

> Any doubt we may have as to whether this evidence actually supports the jury finding of permanent incapacity must be resolved in favor of the right of the injured workman to receive compensation. *Baily v. American General Ins. Co.,* 154 Tex. 430, 279 S.W.2d 315, 318; *Hargrove v. Trinity Universal Ins. Co.,* 152 Tex. 243, 256 S.W.2d 73.

*Royal Indemnity Co. v. Smith,* 456 S.W.2d 218, 221 (Tex.Civ.App.—Fort Worth 1970, no writ); *Travelers Ins. Co. v. Arnold,* 378 S.W.2d 78, 83 (Tex.Civ.App.—Dallas 1964, no writ).

■ In essence, factual sufficiency questions in worker's compensation cases must be determined as in other cases. Therefore, in passing on the insurance company's factual sufficiency points we must review and consider all of the evidence, both favorable and unfavorable to the company's position, to determine if the jury findings of total and permanent disability are so against the great weight and preponderance of the evidence as to be manifestly unjust or wrong. Having done so, we conclude that the insurance company's factual sufficiency point must be overruled.

In summary, the insurance company's points of error one through nine are overruled. Accordingly, the judgment of the trial court is affirmed.

REYNOLDS, J., dissenting.

REYNOLDS, Justice, dissenting.

I respectfully dissent.

By her own admission, Valentina A. Torres was able to obtain and retain employment and ably performed the tasks of her employment during some of the period the jury found she was totally incapacitated. Consequently, within the meaning of the Texas Workers' Compensation Act, Mrs. Torres was not, and the evidence is factually insufficient to sustain the jury finding that she was, totally incapacitated during those periods of time.

Because constitutionally the judgment of a court of civil appeals is final and binding on the Supreme Court on all questions of fact, Tex.Const. art. V, § 6, it normally serves no useful purpose to record a disagreement with the majority's determination of the factual sufficiency of the evidence. But inherent in that constitutional command is the essential that the determination be reached under proper rules of law, *Hubacek v. Ennis State Bank*, 159 Tex. 576, 325 S.W.2d 124, 126 (1959), and a determination reached under a misconception of the law applicable to the facts is error which calls for a consideration of the question under the proper rules of law. *Puryear v. Porter*, 153 Tex. 82, 264 S.W.2d 689, 690 (1954). Thus, with the belief that the majority has reached its decision under an erroneous view of the law, I enter this dissent.

Within the meaning of the Texas Workers' Compensation Act, total incapacity, which does not necessarily imply an absolute physical inability to perform any kind of labor, exists when a worker is disabled to the extent that he cannot perform the usual tasks of a workman in such a way as to enable him to obtain and retain employment. *Texas Employers' Ins. Ass'n v. Mallard*, 143 Tex. 77, 182 S.W.2d 1000, 1001

(1944). In connection with this standard, it has been recognized that the injured party's testimony, even though contradicted by medical witnesses, may establish the disability, *Texas Employers' Ins. Ass'n v. Nelson*, 534 S.W.2d 150, 152 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.), and the fact that an employee works and earns money after an injury is not conclusive on the issue of total incapacity, but is an evidentiary factor to be considered with all other facts and circumstances, *Aguirre v. Pan American Insurance Company*, 417 S.W.2d 900, 902 (Tex. Civ.App.—San Antonio 1967, writ ref'd n. r. e.), particularly where the work is compelled by economic necessity. *Texas Employers' Ins. Ass'n v. Pillow*, 268 S.W.2d 716, 721 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.). Conceiving this law to be applicable to the evidence set forth in its opinion, the majority has determined that the recited evidence is factually sufficient to support the jury finding of total and permanent incapacity, "particularly . . . when, as here, the claimant continues to work and earn money after her injury out of hardship and economic necessity."

Yet, a part of the same law is that to recover for total incapacity, the claimant has the burden to prove by a preponderance of all of the evidence that the disability is not merely partial. *Southern Underwriters v. Boswell*, 138 Tex. 255, 158 S.W.2d 280, 283 (1942). Partial incapacity is defined, in 2 State Bar of Texas, Texas Pattern Jury Charges § 22.02 (1970), in these words:

"PARTIAL INCAPACITY" is any degree of incapacity less than total incapacity, and means that a person's earning capacity is reduced because he can perform only part of the usual tasks of a workman or can only do lower-paying work than he could do before his injury, but can get and keep employment suitable to his condition.

This definition has been specifically approved by the Supreme Court with the concurrent holding that the definition comports with the intent of the Workers' Compensation Act. *Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 479 (Tex.1978).

Impliedly, then, the majority has determined that the recited evidence negates partial incapacity. However, omitted from the majority's recitation of the evidence is that during her testimony, Mrs. Torres unequivocally agreed that she was physically able to do the work at Feather Fabrics, where her intentions to continue at that employment were forestalled when the company went out of business, and at Texas Instruments, where she hopes the employment becomes permanent. There is no other evidence to contradict these statements. Mrs. Torres' testimonial declarations that she obtained and retained employment which she is physically able to do are clear and unequivocal declarations which relate to facts peculiarly within her own knowledge. Under these circumstances, the declarations are judicial admissions which are conclusive on Mrs. Torres, *Gevinson v. Manhattan Construction Co. of Okla.*, 449 S.W.2d 458, 466 (Tex.1969), and preclude a finding of total permanent incapacity during the periods of such employment. To uphold a recovery for total and permanent incapacity, the evidence must not only show the workman is disabled from performing the usual tasks of a workman, but it must also show the workman is disabled to such an extent that he cannot get and keep employment. *Commercial Ins. Co. of Newark, N. J. v. Puente*, 535 S.W.2d 948, 952 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.).

The situation pictured by all of the evidence is not one where Mrs. Torres, spurred only by economic necessity, labored when she was not physically able to perform the tasks of the employment she undertook after her injury. Rather, Mrs. Torres' own testimony depicts the situation where she obtained and retained employment, albeit at a less strenuous job than she had before her injury, and is ably performing the usual tasks of her employment on a full-time basis at a rate of pay in excess of that formerly received. At most, the situation Mrs. Torres described, and corroborated by the medical evidence, is one of partial incapacity; and, in similar situations, a finding of total and permanent incapacity during

such period of time has been held to be against the great weight and preponderance of the evidence. *Commercial Ins. Co. of Newark, N. J. v. Puente, supra; Texas Employers' Insurance Ass'n v. Vineyard*, 316 S.W.2d 156 (Tex.Civ.App.—Dallas 1958, no writ).

Reaching this result does not conflict with the principles underlying the holdings in the cases cited by the majority in support of their determination of evidential sufficiency. *None* of those cases, so far as the opinions reveal, confronted a factual situation involving a claimant's own judicial admission of physical ability to perform the tasks of the post-injury employment. Likewise inapposite is Mrs. Torres' contention, which coincides with the majority's holding, that the rule of *Texas Employers' Ins. Ass'n v. Mallard, supra*, has been interpreted to mean that disability is total when the employee cannot get and keep employment for physical labor such as he or she had to do to make a living prior to the injury. Although Mrs. Torres cites two cases which contain statements tending to support the contention, the authorities listed in those cases for the statements do not make that interpretation of the rule. Moreover, it is an unwarranted interpretation, for *Texas Employers' Ins. Ass'n v. Mallard, supra*, clearly states that total incapacity implies a disability to perform the usual tasks of a workman and not merely the usual tasks of his usual occupation or of any particular one trade or occupation. 182 S.W.2d at 1002.

Therefore, under the proper rules of law applicable to the facts in this cause, the evidence should be held factually insufficient to sustain the jury finding of total and permanent incapacity, the judgment should be reversed, and the cause should be remanded. Because the majority has reached a contrary determination under what I view to be a misconception of the applicable law, I respectfully dissent.

### ON MOTION FOR REHEARING

DODSON, Justice.

On motion for rehearing, appellant International Insurance Company maintains that

the evidence conclusively shows only partial incapacity because the employee got and kept employment which she was physically able to perform. Appellant further asserts that we failed to consider all of the evidence by ignoring the employee's judicial admissions that she got and kept employment. The dissenting opinion also asserts that Mrs. Torres judicially admitted that "she obtained and retained employment which she is physically able to do," thus precluding "a finding of total and permanent incapacity during the periods of such employment."

■ It is undisputed that Mrs. Torres was temporarily employed by Feather Fabrics for approximately five months. Similarly, she was employed in a temporary position with Texas Instruments for the three weeks prior to, and continuing at, the time of trial. With regard to this employment, Mrs. Torres testified on direct examination:

Q. Were you able to do that work [at Feather Fabrics]?

A. Yes.

Q. Did you have any problems while you were doing it, with your back?

A. Well, sometimes but I didn't complain because I needed to work, I needed the money to support my kids.

Mrs. Torres also testified that there had been no significant period of time between the accident on June 14, 1974, and the trial on September 21, 1977, when she had been free of her back problems. Mrs. Torres did, however, testify on cross-examination that she was "able to do the work okay physically" at both Feather Fabrics, where her job required her only to thread yarn through a machine from a sitting position, and at Texas Instruments, where she placed labels on calculators from a sitting position. We do not find this isolated statement concerning physical ability to be a deliberate, clear and unequivocal testimonial declaration constituting a judicial admission of partial inca-

pacity which would preclude a jury finding of total and permanent incapacity in this case. *See Jennings v. Texas Employers' Insurance Association*, 397 S.W.2d 127, 128 (Tex.Civ.App.—Waco 1965, no writ), and the Supreme Court cases cited therein for a positive statement of the test concerning testimonial declarations as judicial admissions.

■ Under the Insurance Company's contention, if there is any evidence that the claimant obtained and retained employment after the injury which the claimant is physically able to do, then the trial court is required to instruct the jury not to find total and permanent incapacity for any period during which the claimant worked. Alternatively, the trial court is required to set aside the jury verdict of total incapacity and grant a new trial. When carried to its logical conclusion, the Insurance Company's contention would require preemptive instructions and successive new trials, until the jury, the trial court and the appellate courts agreed on the precise degree of incapacity.[1] We do not perceive the controlling case law to dictate this drastic preemption of the province of the jury. Rather the courts of this state have generally refrained from attempting to substitute their judgment for that of the jury on the issue of degree of incapacity. We further note that the courts of this state have wisely refrained from attempting to establish a formula for the determination of the precise degree of incapacity a worker suffers other than the usual definitions of total incapacity and partial incapacity.

In conclusion, we reiterate that in determining the Insurance Company's factual sufficiency points of error, we have reviewed and considered all of the evidence in the record, both favorable and unfavorable to the Insurance Company's position, and having done so we reaffirm our determination that the jury finding of total and permanent incapacity is not so against the great weight and preponderance of the evidence as to be manifestly unjust. The In-

1. Under Rule 326, Texas Rules of Civil Procedure, the trial court may grant only two new trials in a cause because of insufficiency or weight of the evidence; however, no limitation is placed on the appellate courts.

surance Company's motion for rehearing is overruled. With these further comments, discussion and considerations, we adhere to our original opinion affirming the judgment of the trial court in the cause.

REYNOLDS, J., dissenting.

REYNOLDS, Justice, dissenting.

I adhere to the view expressed in my dissenting opinion. Therefore, I respectfully dissent to the overruling of International Insurance Company's motion for rehearing.

The majority has characterized Mrs. Torres' cross-examination testimony "that she was 'able to do the work okay physically'" as an "isolated statement concerning physical ability" which "[w]e do not find . . . to be a deliberate, clear and unequivocal testimonial declaration constituting a judicial admission of partial incapacity which would preclude a jury finding of total and permanent incapacity in this case." The pertinent testimony is:

Q This job at Feather Fabrics—as I understand it, Feather Fabrics went out of business?

A Yes, sir.

Q And you intended to continue working for them, didn't you?

A Yes, sir.

Q And now you've picked up and gone to work for TI and that's a good company to work for, I take it?

A I think so, yes.

Q And they have good benefits out there?

A I don't know.

Q Do you intend to continue working for Texas Instruments?

A Well, it's only temporarily, that's what they told me.

Q Well, what I'm getting at, at least my experience in working has been that a lot of temporary jobs turn into permanent jobs. If that's the case in your situation, do you intend to continue working for them?

A I hope.

Q Then you're able to do the work okay physically?

A Yes, sir.

Q And you were able to do the work okay at Feather Fabrics, physically, weren't you?

A Yes, sir.

Q And your termination or quitting of the employment at Feather Fabrics had nothing to do with any physical problem or anything, it went out of business?

A Yes, sir.

Mrs. Torres is in the best position to honestly evaluate the disabling effects of her injury. She has declared that she is physically able to perform the tasks of the employment she obtained. Her declarations are clear and unequivocal expressions of these facts which are peculiarly within her knowledge. They do not contradict any other portion of her testimony. They stand unmodified and unexplained. They are, thereby, judicial admissions which are conclusive on Mrs. Torres and preclude a finding of total and permanent disability during those periods of employment.

Thus, I would grant the motion for rehearing. I would reverse the judgment because the evidence is factually insufficient to sustain the jury finding of total and permanent incapacity during the time Mrs. Torres was able to obtain and physically able to retain employment, and remand the cause. Because the majority has not done so, I respectfully dissent.